UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KRISTINA MIRE, MD | CIVIL ACTION |
| VERSUS | NO. 15-6965 |
| BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE, ET AL. | SECTION "R" (2) |

## ORDER AND REASONS

Defendants Dr. Bonnie Desselle, Dr. Ricardo Sorenson, and the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the LSU Board) move to dismiss plaintiff Kristina Mire, MD's remaining claims on grounds of sovereign immunity. For the following reasons, the Court grants the motion in part and dismisses all of Mire's claims except her ADA Title I claim for reinstatement against Desselle and Sorenson.

## I.   BACKGROUND

In her Second Amended Complaint, Kristina Mire, MD alleges that the LSU Health Sciences Center (LSU Health),[1] Dr. Bonnie Desselle, and Dr. Ricardo Sorenson discriminated against her based on her disability, and that this conduct violated Titles I and II of the Americans with Disabilities Act of 1990 (ADA) and the ADA Amendments Act of 2008 (ADAAA). Desselle and Sorenson are sued in their official capacities as

---

[1]   The Court has previously found that the LSU Board, rather than LSU Health, is the proper defendant, R. Doc. 44 at 7-9, and the Board has been substituted as defendant in this case.

Program Director and Chair of LSU Health's Department of Pediatrics.[2] According to the complaint, Mire enrolled as a medical resident at LSU Health in July 2006.[3] Shortly after enrolling, Mire sought treatment from a psychiatrist for Attention Deficit Hyperactivity Disorder.[4] She also developed insomnia, which impaired her effectiveness as a resident.[5] By December 2006, Mire's supervisors described Mire as inefficient and prone to oversleeping and tardiness.[6] Mire was informed of these concerns in January 2007.[7] In response, Mire revealed her insomnia to her program director at LSU Health.[8]

By March 2007, Mire's psychiatrist suspected that Mire had an Adjustment Disorder and prescribed antidepressant and antipsychotic medication.[9] Mire, however, reacted negatively to the medications and soon stopped taking them.[10] In June 2007, Mire received more unfavorable performance reviews.[11] Mire disclosed her adjustment disorder to the Chief Resident at LSU Health in July 2007.[12] Following this disclosure, Mire was placed in a disciplinary program designed to remediate deficiencies in her performance.[13] As part of the disciplinary program, Mire was reevaluated by her psychiatrist.[14] Following this evaluation, Mire was diagnosed with Major Depressive Disorder and was once again prescribed medication.[15] Although Mire continued to

---

[2] R. Doc. 27 at 2.
[3] *Id.* at 1.
[4] *Id.*
[5] *Id.* at 3.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.* at 4-5.
[10] *Id.* at 5.
[11] *Id.* at 6.
[12] *Id.*
[13] *Id.*
[14] *Id.* at 7.
[15] *Id.*

respond negatively to her medication, Mire's program director at LSU Health told Mire that she was required under the disciplinary program to take all her prescribed medication.[16] In response, Mire requested and received permission to visit another psychiatrist.[17] The second psychiatrist confirmed Mire's diagnosis of Major Depressive Disorder, adjusted her medication, and recommended a leave of absence.[18] Following this diagnosis, Mire was placed on a modified schedule until November 2007, when she was placed on a more rigorous "in-patient call schedule."[19]

From January to April 2008, Mire took a leave of absence from the residency program.[20] When she returned, LSU Health did not assign her duties gradually, but instead placed Mire on "full on-call duty."[21] Following her return, Mire once again had trouble performing her duties, and she was placed on probation.[22] Mire appealed LSU Health's decision to place her on probation to an internal review body.[23] This appeal was denied on June 19, 2008, and Mire was suspended from the residency program in August 2008.[24] LSU Health cited several reasons for the suspension, including Mire's alleged violation of the terms of her probation and unprofessional behavior.[25] Following a competency hearing and an administrative appeal process, Mire was terminated by LSU

---

[16]   *Id.*
[17]   *Id.*
[18]   *Id.*
[19]   *Id.*
[20]   *Id.* at 8.
[21]   *Id.*
[22]   *Id.*
[23]   *Id.*
[24]   *Id.* at 10.
[25]   *Id.*

3

Health.[26] The Dean of the LSU Health Sciences Center School of Medicine "accepted and confirmed" Mire's termination on March 21, 2009.[27]

Mire filed her initial complaint in this action, alleging violations of the Americans with Disabilities Act, on December 21, 2015.[28] Ten days later, Mire amended her complaint.[29] On March 30, 2016, after being granted leave to once again amend her complaint,[30] Mire filed a Second Amended Complaint.[31] In her Second Amended Complaint, Mire (1) added Desselle and Sorenson as defendants in their official capacities, (2) clarified that she was asserting claims under both Title I and Title II of the ADA, and (3) made modest changes to her factual allegations.[32]

On September 12, 2016, the Court dismissed Mire's claims against the LSU Board arising under Title I of the ADA and ADAAA on grounds of sovereign immunity.[33] The LSU Board filed the motion leading to this ruling before Mire amended her pleading to explicitly bring claims under Title II. The Court, therefore, granted the Board leave to file a motion challenging those claims within 21 days.[34] Defendants now move to dismiss the remaining Title II claims against the LSU Board, along with all claims against Desselle and Sorenson. Defendants have separately moved to stay discovery pending resolution of this motion.[35]

---

26   *Id.*
27   *Id.*
28   R. Doc. 1.
29   R. Doc. 7.
30   R. Doc.
31   R. Doc. 27
32   *Id.* Mire's original and First Amended complaints alleged violations of the ADA and ADAAA generally, but did not specify any Titles.
33   R. Doc. 44.
34   *Id.* at 12.
35   R. Doc. 48.

4

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of an action if the court lacks jurisdiction over the subject matter of the plaintiff's claim. Motions submitted under Rule 12(b)(1) allow a party to challenge the court's subject matter jurisdiction based upon the allegations on the face of the complaint. *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996); *see also Lopez v. City of Dallas, Tex.*, No. 03–2223, 2006 WL 1450420, at *2 (N.D. Tex. May 24, 2006). In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001); *see also Barrera–Montenegro*, 74 F.3d at 659. The plaintiff bears the burden of demonstrating that subject matter jurisdiction exists. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

When examining a factual challenge to subject matter jurisdiction that does not implicate the merits of plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 223 (5th Cir. 2012). Accordingly, the Court may consider matters outside the pleadings, such as testimony and affidavits. *See Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015). A court's dismissal of a case for lack of subject matter jurisdiction is not a decision on the merits, and the dismissal does not necessarily prevent the plaintiff from pursuing

the claim in another forum. *See Cox, Cox, Filo, Camel & Wilson, L.L.C. v. Sasol N. Am., Inc.*, 544 F. App'x 455, 456 (5th Cir. 2013).

### III. DISCUSSION

Defendants move to dismiss all remaining claims on grounds of sovereign immunity. "The Eleventh Amendment bars citizens of a state from suing their own state or another state in federal court unless the state has waived its sovereign immunity or Congress has expressly abrogated it." *Raj v. Louisiana State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013) (internal citations omitted). Louisiana has explicitly asserted its sovereign immunity by statute. La. Rev. Stat. § 13:5106(A) (2010) ("No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court."). This immunity extends to certain State agencies as well as the State itself, and "[i]t is well-settled in the Fifth Circuit that institutions of higher education and their boards are arms of the state entitled to immunity." *Hall v. Bd. of Supervisors of Cmty. & Tech. Colleges*, 15-67, 2015 WL 2383744, at *4 (E.D. La. May 18, 2015); *see also Raj*, 714 F.3d at 328 ("[T]he LSU Board is an arm of the state and is immune from suit under the Eleventh Amendment.").

The Court first considers Mire's Title I claims against Desselle and Sorenson and then Mire's Title II claims against all defendants.

6

### A. Title I – Desselle and Sorenson

In its order regarding the LSU Board's first motion to dismiss, the Court found that Congress has not validly abrogated Louisiana's immunity from Title I claims, that the Board is an arm of the state, and that Mire's Title I claim against the LSU Board was therefore barred by the Eleventh Amendment. Mire argues that her claims against Desselle and Sorenson escape this fate because they fall under the limited exception articulated in *Ex parte Young*, 209 U.S. 123 (1908).

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotations and modifications omitted). In this case, Mire seeks, among other remedies, reinstatement to her previous position as a medical resident. The Supreme Court recognizes that private parties can sue for injunctive relief under *Young* to enforce the standards of Title I. *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 374 n.9 (2001). Further, the Fifth Circuit "has always treated *Ex parte Young* as an appropriate vehicle for pursuing reinstatement to a previous job position." *Nelson v. Univ. of Texas at Dallas*, 535 F.3d 318, 322 (5th Cir. 2008). Accordingly, in this circuit, Mire's complaint alleges an ongoing violation for purposes of *Ex parte Young* and seeks prospective relief. Because Mire's claims also arise under the ADA, a federal law, they are not barred by the Eleventh Amendment. *See McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 413-14 (5th Cir. 2004) (holding that state officers in their official capacities were proper defendants in *Ex parte Young* suit to enforce the officers' alleged duties under Title II of the ADA); *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 178 (3d

7

Cir. 2002) ("While there appears to be no individual liability for damages under Title I of the ADA . . . prospective relief against state officials acting in their official capacities may proceed under the statute.").

Desselle and Sorenson attempt to resist this conclusion by arguing that they are not "employers" under the ADA and therefore are not proper Title I defendants. But, as state officials sued in their official capacity, Desselle and Sorenson "represent[] their respective state agencies . . . for all purposes except the Eleventh Amendment." *McCarthy ex rel.* Travis, 381 F.3d at 414. Because Desselle and Sorenson make no showing that the LSU board is not an employer under the ADA, this argument fails. *See Garrett*, 531 U.S. at 374 n.9 (2001) (noting that Title I "can be enforced . . . by private individuals in actions for injunctive relief under *Ex parte Young*."); *Whitfield v. Tennessee*, 639 F.3d 253, 257 (6th Cir. 2011) (holding that complaint against state employee in official capacity "contain[ed] an *Ex parte Young* action for reinstatement pursuant to Title I of the ADA."). Desselle and Sorenson's only supporting case, *Franklin v. City of Slidell*, 936 F. Supp. 2d 691 (E.D. La. 2013), did not concern *Ex parte Young*, and is therefore distinguishable.

For these reasons, the Court finds that Mire's claim against Desselle and Sorenson for reinstatement may proceed, but all other Title I claims (*i.e.* for backpay or compensatory damages) must be dismissed.

### B. Title II – All Defendants

In addition to her Title I claims, Mire brings claims against all three defendants under Title II of the ADA and ADAAA. Title II protects qualified disabled individuals

8

against exclusion from "the services, programs, or activities of a public entity."[36] 42 U.S.C. § 12132 (2012). In *United States v. Georgia*, 546 U.S. 151, 159-60 (2006), the Supreme Court held that Title II validly abrogates state sovereign immunity for conduct that violates the Constitution. The Court established a three-part test for determining whether this abrogation of state sovereign immunity applies in a particular case: a court must (1) "consider 'which aspects of the State's alleged conduct violated Title II'"; (2) "determine 'to what extent such misconduct also violated the Fourteenth Amendment.'"; and (3), if it finds that the conduct violated Title II but not the Fourteenth Amendment, "the court must then determine 'whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.'" *Hale v. King*, 642 F.3d 492, 498 (5th Cir. 2011) (quoting *Georgia*, 546 U.S. at 159). Because the first prong of this test requires an examination of the merits of the plaintiff's case, the Court begins by applying the Rule 12(b)(6) standard to Mire's claims. *Hale*, 642 F.3d at 498.

In this case, the LSU Board has raised the statute of limitations as a defense.[37] "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). Mire

---

[36] "Unlike Title I of the ADA, Title II does not create a cause of action for employment discrimination." *Taylor v. City of Shreveport*, 798 F.3d 276, 282 (5th Cir. 2015). At least one court has found that a medical residency is "more akin to a program of higher education than an employment position," and that a discharged resident may therefore bring claims under Title II. *Sarkissian v. W. Va. Univ. Bd. of Governors,* No. 05-144, 2007 WL 1308978, at *8 (N.D.W. Va. May 3, 2007); *see also Davis v. Mann,* 882 F.2d 967, 974 (5th Cir. 1989) ("It is well-known that the primary purpose of a residency program is not employment or a stipend, but the academic training and the academic certification for successful completion of the program."). Because the Court finds that Mire's Title II claim is time-barred, it need not reach the question of whether a claim for wrongful termination from a medical residency program is cognizable under Title II.
[37] R. Doc. 38 at 2; R. Doc. 46-2 at 2.

alleges that she was discharged from the residency program on March 21, 2009.[38] She filed this action more than six years later, on December 21, 2015.[39]

Mire alleges that her claims arise under both the ADA, and the ADAAA which modified the original law. Neither law contains a statute of limitations. *Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011). For claims cognizable under the pre-amendment ADA, courts borrow the "most analogous" forum-state limitation period. *Id.* In Louisiana, the relevant period is the state's one-year personal injury statute of limitations. *Joseph v. Port of New Orleans*, No. 99-1622, 2002 WL 342424, at *12 (E.D. La. Mar. 4, 2002); *see also Frame*, 657 F.3d at 237 (applying Texas' personal injury statute of limitations to ADA claim). If, however, Mire's claims were not cognizable under the pre-amendment ADA, and were therefore only "made possible" by the amendments contained in the ADAAA, the Court must apply the default four-year limitations period for causes of action arising under Acts of Congress enacted after December 1, 1990. *See* 28 U.S.C. § 1658(a) (2012); *Frame*, 657 F.3d at 237. Regardless of which period applies, the question of when an ADA claim accrued is answered under federal law. *Frame*, 657 F.3d at 238. Mire's claims therefore accrued when she had "sufficient information to know that [s]he ha[d] been denied the benefits of a service, program, or activity of a public entity." *Id.*

Under this standard, Mire's claims accrued, at the latest, on the date of her dismissal from the residency program in March 2009. The Court therefore need not decide whether Mire's claim was "made possible" by the ADAAA. Mire first filed suit in 2015, and the claim therefore, absent any tolling, has expired under either period.

---

[38] R. Doc. 27 at 10.
[39] R. Doc. 1.

10

To resist the conclusion that her Title II claims are prescribed, Mire argues that: (1) her Title II claims were asserted in her original complaint, not merely her second complaint; (2) her dismissal constitutes an ongoing violation of the ADA; and (3) the facts supporting Mire's Title II claim were part of the EEOC investigation, and the statute of limitations was therefore tolled. These arguments fail.

As to Mire's first argument, it is irrelevant whether Mire's Title II claims were first asserted in her original complaint or in a later complaint. As explained above, Mire's claims prescribed before she filed this suit.  Mire's second argument is also quickly dispatched; Mire cites no case holding that termination constitutes a continuing course of conduct for prescription purposes, and such arguments have been rejected as frivolous. *See Waller v. Wal-Mart Stores, Inc.*, No. 93-588, 1994 WL 243718, at *2 (E.D. Tex. Jan. 18, 1994) (rejecting as frivolous plaintiffs argument that discrimination continued after she was terminated).  Mire's supporting cases do not concern termination from a job, medical residency, or any similar program and are therefore easily distinguishable. *See Glass v. Petro-Tex Chem. Corp.*, 757 F.2d 1554, 1561 (5th Cir. 1985) (acknowledging that "a persisting and continuing system of discriminatory practices in promotion or transfer" may constitute an ongoing violation); *Joseph S. v. Hogan*, 561 F. Supp. 2d 280, 286 (E.D.N.Y. 2008) (holding that alleged "warehousing [of] individuals with mental illness in nursing homes" was an ongoing violation); *Martin v. Voinovich*, 840 F. Supp. 1175, 1180 (S.D. Ohio 1993) (holding that state's alleged failure to provide community housing and other services to mentally disabled residents constituted ongoing violation).

Mire's final argument is that the limitations period was tolled by her pursuit of administrative remedies before the Equal Employment Opportunity Commission and

Department of Justice.[40]  When a plaintiff is required to exhaust available administrative remedies before filing suit, the relevant statute of limitations may be tolled pending the administrative action.  *See e.g.*, *Harris v. Hegmann*, 198 F.3d 153, 158 (5th Cir. 1999) (tolling limitations period where "exhaustion requirement functioned as a legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action." (internal quotations omitted)).  If the relevant law contains no exhaustion requirement, the limitations period continues to run even while plaintiff pursues an optional administrative remedy*.  Radford v. Gen. Dynamics Corp.*, 151 F.3d 396, 399 (5th Cir. 1998) ("If there is no exhaustion requirement, there is no need to toll the statute [of limitations].").  Although the Fifth Circuit has twice declined to reach the question, *see Holmes v. Texas A&M Univ.*, 145 F.3d 681, 684 (5th Cir. 1998), and *Decker v. Univ. of Houston*, No. 97-20502, 1998 WL 698920, at *9 (5th Cir. Sept. 15, 1998), the clear consensus among other courts is that Title II, unlike Title I, imposes no administrative exhaustion requirement.  *See Elwell v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma,* 693 F.3d 1303, 1309 (10th Cir. 2012) ("[Title II] lacks the requirement that an otherwise qualified individual exhaust EEOC administrative remedies before bringing suit."); *Leine v. California Dep't of Rehab.*, 205 F.3d 1351, 1351 (9th Cir. 1999) ("Title I . . . has an exhaustion requirement, but Title II does not."); *Bledsoe v. Palm Beach Cty. Soil & Water Conservation Dist.*, 133 F.3d 816, 824 (11th Cir. 1998) (noting that exhaustion "is mandatory in Title I but not in Title II of the ADA."); *Smith v. City of Philadelphia*, 345 F. Supp. 2d 482, 487 (E.D. Pa. 2004) ("There is 'no requirement that plaintiffs file an administrative complaint or otherwise follow the procedural

---

40    R. Doc. 27 at 10-11.

requirements of Title I when filing a Title II claim.'" (quoting *Wagner v. Texas A & M Univ.*, 939 F. Supp. 1297, 1309 (S.D. Tex. 1996))); *see also* 28 C.F.R. pt. 35, App. B § 35.172 (2011) ("Because [Title II] does not require exhaustion of administrative remedies, the complainant may elect to proceed with a private suit at any time."); *Mary Jo C. v. New York State & Local Ret. Sys.*, 707 F.3d 144, 170 (2d Cir. 2013) (stating without deciding that "it appears that those filing suit under Title II need not" exhaust administrative remedies).

The Court finds the reasoning of these cases persuasive and holds that Title II of the ADA contains no exhaustion requirement. Accordingly, the limitation period for Mire's Title II claim was not tolled during her pursuit of administrative remedies, and the claim is barred. *See Thorne v. Hale,* No. 08-601, 2009 WL 890136, at *5 (E.D. Va. Mar. 26, 2009) ("[B]ecause plaintiffs are not required to exhaust their administrative remedies before bringing suit pursuant to Title II, notifying state or federal agencies of a potential claim does not toll the statute of limitations.").

Because the limitation period was not tolled, and her injuries are not ongoing, Mire's Title II claims are time barred. Mire has therefore failed to state a claim for violation of Title II, and the Court must dismiss her claim before reaching the remaining prongs of the *Georgia* test. *See Hale v. King*, 642 F.3d. 492, 503-504 (5th Cir. 2011); *Zibbell v. Michigan Dep't of Human Servs.*, 313 F. App'x 843, 847 (6th Cir. 2009) ("[B]ecause the district court correctly determined that the Zibbells failed to state an ADA claim, it need not—and should not—have ventured into the consideration of immunity under the Eleventh Amendment."). Accordingly, Mire's Title II claims are dismissed.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART. Mire's claims for reinstatement under Title I of the ADA and ADAAA against Desselle and Sorenson in their official capacities remain. All other claims under Title I are DISMISSED WITHOUT PREJUDICE. All of Mire's claims arising under Title II of the ADA and ADAAA are DISMISSED WITH PREJUDICE. Defendants' motion to stay discovery pending resolution of this motion is DENIED AS MOOT.

New Orleans, Louisiana, this __17th__ day of February, 2017.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE