UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KRISTINA MIRE, MD | CIVIL ACTION |
| VERSUS | NO. 15-6965 |
| BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE, ET AL. | SECTION "R" (2) |

## ORDER AND REASONS

Defendants Dr. Bonnie C. Desselle and Dr. Ricardo Sorenson move for summary judgment on plaintiff Kristina Mire's claim for reinstatement into LSU Health Sciences Center's pediatric residency program. In support, Desselle and Sorenson argue that Mire has failed to show that either defendant has the authority to reinstate Mire into LSU Health's residency program. Because the Court finds that Mire has failed to meet her burden to show that she has standing to pursue her claim against these defendants, the Court grants summary judgment.

## I. BACKGROUND

In her Second Amended Complaint, Kristina Mire, MD alleges that the LSU Health Sciences Center (LSU Health),[1] Dr. Bonnie Desselle, and Dr. Ricardo Sorenson discriminated against her based on her disability, and that this conduct violated Titles I and II of the Americans with Disabilities Act of 1990 (ADA) and the ADA Amendments Act of 2008 (ADAAA). Desselle and Sorenson are sued in their official capacities as Program Director and Chair of LSU Health's Department of Pediatrics.[2] According to the complaint, Mire enrolled as a medical resident at LSU Health in July 2006.[3] Shortly after enrolling, Mire sought treatment from a psychiatrist for Attention Deficit Hyperactivity Disorder.[4] She also developed insomnia, which impaired her effectiveness as a resident.[5] By December 2006, Mire's supervisors described Mire as inefficient and prone to oversleeping and tardiness.[6] Mire

---

[1] The Court has previously found that the LSU Board, rather than LSU Health, is the proper defendant, R. Doc. 44 at 7-9, and the Board has been substituted as defendant in this case.
[2] R. Doc. 27 at 2.
[3] *Id.* at 1.
[4] *Id.*
[5] *Id.* at 3.
[6] *Id.*

2

was informed of these concerns in January 2007.[7]  In response, Mire revealed her insomnia to her program director at LSU Health.[8]

By March 2007, Mire's psychiatrist suspected that Mire had an Adjustment Disorder and prescribed antidepressant and antipsychotic medications.[9]  Mire, however, reacted negatively to the medications and soon stopped taking them.[10]  In June 2007, Mire received more unfavorable performance reviews.[11]  Mire disclosed her Adjustment Disorder to the Chief Resident at LSU Health in July 2007.[12]  Following this disclosure, Mire was placed in a disciplinary program designed to remediate deficiencies in her performance.[13]  As part of the disciplinary program, Mire was reevaluated by her psychiatrist.[14]  Following this evaluation, Mire was diagnosed with Major Depressive Disorder and was once again prescribed medication.[15]  Although Mire continued to respond negatively to her medication, Mire's program director at LSU Health told Mire that she was required under the disciplinary

---

[7]     *Id.*
[8]     *Id.*
[9]     *Id.* at 4-5.
[10]    *Id.* at 5.
[11]    *Id.* at 6.
[12]    *Id.*
[13]    *Id.*
[14]    *Id.* at 7.
[15]    *Id.*

program to take all her prescribed medication.[16] In response, Mire requested and received permission to visit another psychiatrist.[17] The second psychiatrist confirmed Mire's diagnosis of Major Depressive Disorder, adjusted her medication, and recommended a leave of absence.[18] Following this diagnosis, Mire was placed on a modified schedule until November 2007, when she was placed on a more rigorous "in-patient call schedule."[19]

From January to April 2008, Mire took a leave of absence from the residency program.[20] When she returned, LSU Health did not assign her duties gradually, but instead placed Mire on "full on-call duty."[21] Following her return, Mire once again had trouble performing her duties, and she was placed on probation.[22] Mire appealed LSU Health's decision to place her on probation to an internal review body.[23] This appeal was denied on June 19, 2008, and Mire was suspended from the residency program in August 2008.[24] LSU Health cited several reasons for the suspension, including Mire's alleged violation of the terms of her probation and unprofessional

---

16   *Id.*
17   *Id.*
18   *Id.*
19   *Id.*
20   *Id.* at 8.
21   *Id.*
22   *Id.*
23   *Id.*
24   *Id.* at 10.

4

behavior.[25] Following a competency hearing and an administrative appeal process, Mire was terminated by LSU Health.[26] The Dean of the LSU Health Sciences Center School of Medicine "accepted and confirmed" Mire's termination on March 21, 2009.[27]

Mire filed her initial complaint in this action, alleging violations of the Americans with Disabilities Act, on December 21, 2015.[28] Ten days later, Mire amended her complaint.[29] On March 30, 2016, after being granted leave to amend her complaint once again,[30] Mire filed a Second Amended Complaint.[31] In her Second Amended Complaint, Mire (1) added Desselle and Sorenson as defendants in their official capacities, (2) clarified that she was asserting claims under both Title I and Title II of the ADA, and (3) made modest changes to her factual allegations.[32]

On September 12, 2016, the Court dismissed Mire's claims against the LSU Board arising under Title I of the ADA and ADAAA on grounds of

---

[25]  *Id.*
[26]  *Id.*
[27]  *Id.*
[28]  R. Doc. 1.
[29]  R. Doc. 7.
[30]  R. Doc.
[31]  R. Doc. 27
[32]  *Id.* Mire's original and First Amended complaints alleged violations of the ADA and ADAAA generally, but did not specify any Titles.

5

sovereign immunity.[33] On February 17, 2017 the Court dismissed Mire's remaining Title II claims against the LSU Board, but found that Mire had stated Title I claims for prospective injunctive relief against Desselle and Sorenson.[34] Defendants now move for summary judgment on these remaining claims.[35] In support, Desselle and Sorenson argue that Mire has failed to meet her burden to show either defendant has the authority to reinstate Mire into LSU Health's residency program.[36] In addition, defendants argue that Mire has failed to show that she meets American Board of Pediatrics and National Resident Matching Program requirements for reinstatement.[37] The Court finds that Desselle and Sorenson's authority to reinstate Mire implicates Mire's standing to bring this suit, and therefore the Court's subject matter jurisdiction. The Court therefore begins its inquiry by considering its own jurisdiction.

## II. LEGAL STANDARD

Before the Court may determine whether Desselle and Sorenson are proper defendants under *Ex parte Young*, it must first determine whether it

---

[33] R. Doc. 44.
[34] R. Doc. 76.
[35] R. Doc. 65.
[36] *Id.*
[37] *Id.*

has subject matter jurisdiction over this case. *In re Canion*, 196 F.3d 579, 584 (5th Cir. 1999) ("Federal courts must be assured of their subject matter jurisdiction at all times."); *In re Bass*, 171 F.3d 1016, 1021 (5th Cir.1999) ("Federal courts . . . may question [jurisdiction] *sua sponte* at any stage of judicial proceedings").

"[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Standing ensures that a plaintiff has "'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). The party invoking federal jurisdiction bears the burden of establishing three elements. Lujan, 504 U.S at 561. "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 560. Second, "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly trace[able] to the challenged action of the defendant and not . . . th[e] result [of] the independent action of some third party not before the court." *Id.* Third, it

7

must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.* at 561.

At the summary judgment stage "the plaintiffs' burden on standing is only to raise an issue of material fact." *Croft v. Governor of Texas*, 562 F.3d 735, 746 (5th Cir. 2009). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little,* 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257,

8

1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 *mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322)).

## III. DISCUSSION

To meet the "redressability" prong of the standing inquiry, a plaintiff seeking injunctive relief must show that the defendant has authority to redress the plaintiff's injury. *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) ("[Plaintiff] does not have standing to pursue injunctive relief because [defendant] is without authority to redress his injuries."); *see also Volk v. Gonzales*, 207 F.3d 657, 657 (5th Cir. 2000) (vacating award of injunctive relief where "[n]either defendant in [the] action had the power to effect the court's directives"). Desselle and Sorenson argue that they are not proper *Ex parte Young* defendants because they do not have the authority to reinstate Mire to the LSU Health residency program. Because defendants dispute their own authority to redress Mire's injury, their argument implicitly calls into question Mire's standing to bring this case, and, with it, the Court's subject matter jurisdiction. Accordingly, the Court must determine whether Mire has raised an issue of material fact as to whether Desselle and Sorenson have the authority to order her reinstatement. The Court considers each defendant in turn.

### A. Dr. Sorenson

Mire sues Sorenson "in his official capacity as Chair, LSUHSC Department of Pediatrics."[38] Mire concedes that Sorenson no longer holds that position, but maintains that Sorenson's successor as Chair should be automatically substituted under Federal Rule of Civil Procedure 25(d).

Rule 25(d) provides that "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending." Fed. R. Civ. P. 25(d). Rather, "[t]he officer's successor is automatically substituted as a party." *Id.* Therefore, if Sorenson was the Chair of the Department of Pediatrics at the time Mire sued, the Court would immediately substitute the new Chair, and then ask whether that person could reinstate Mire. *See Jones v. Texas Juvenile Justice Dep't*, 646 F. App'x 374, 375 n.1 (5th Cir. 2016).

Sorenson, however, was *not* the Chair of the Department of Pediatrics when Mire filed her suit. The unrefuted evidence before the Court suggests that Sorenson left the chairmanship in July 2015,[39] and this suit was filed in December 2015. Rule 25(d), by its own terms, applies when a party "ceases to hold office *while the action is pending*." Fed. R. Civ. P. 25(d). It makes

---

[38] R. Doc. 27 at 1.
[39] R. Doc. 65-2 at 1.

11

no provision for when a plaintiff sues a former official, in his formerly-official capacity. Mire cites no other authority for the proposition that the Court will automatically correct a plaintiff's pleading mistakes by substituting the proper official. Accordingly, the question before the Court is whether Sorenson, in his actual capacity as a Clinical Professor, has the authority to reinstate Mire.

In his affidavit, Sorenson states that, as a Clinical Professor, he "does not have the authority or ability to reinstate any present or former resident in the Pediatric Residency program at LSU Health Sciences Center-New Orleans."[40] Mire provides no evidence tending to contradict this assertion. Accordingly, the Court finds that Mire has failed to meet her burden to show that Sorenson has the authority to redress her injury, and Mire's claims against Sorenson therefore fail.

### B. Dr. Desselle

Desselle is a closer case than Sorenson. Unlike Sorenson, Desselle never affirmatively states in her affidavit that she lacks the general authority to reinstate previously dismissed residents.[41] Instead, Sorenson focuses on the American Pediatric Board's requirement that residents who interrupt

---

40    *Id.* at 2.
41    R. Doc. 65-1 at 1-3.

their training for more than 2 years must "petition the ABP to determine whether credit may be awarded for prior training."[42]  Sorenson also asserts that before LSU Health could offer Mire her old spot, Mire would have to reapply through the National Residency Matching Program."[43]

Mire seizes on Desselle's failure to deny a general authority to reinstate residents as evidence that Desselle does, in fact, have such authority.[44]  But this arguments misplaces Mire's burden. As noted, Desselle may satisfy her burden on this point by merely pointing out that the evidence in the record is insufficient with respect to an essential element of Mire's claim.  *See Celotex*, 477 U.S. at 325.  Having done so, the burden shifts to Mire to point to specific admissible evidence showing that Desselle has the authority to grant Mire's requested relief.  *See id.* at 324.  Mire has failed to meet this burden.

The only relevant evidence that Mire attaches to her opposition is a six page excerpt of Desselle's deposition in this case.[45]  In the excerpt, Desselle discusses her role in evaluating pediatric residents, but says nothing regarding her authority to reinstate terminated residents.[46]  Desselle's

---

[42]   *Id* at 1.
[43]   *Id.* at 2.
[44]   R. Doc. 72.
[45]   R. Doc. 72-1.
[46]   *Id.*

13

testimony therefore does not support a finding that she has the authority to reinstate Mire.

Mire's argument is also undermined by her own allegations. In her second amended complaint, Mire alleges that she "was specifically informed by LSUHSC that . . . [her] termination would not become effective unless and until it was approved by the Dean of the Medical School."[47] Mire provides no explanation for why LSU Health would require the Dean of the Medical School to approve terminations, but not reinstatements.

Because Mire has not met her burden to show that Sorenson or Desselle has the authority to reinstate any terminated resident, the Court grants summary judgment.

## IV. CONCLUSION

For the forgoing reasons, the Court finds that it lacks subject matter jurisdiction over Mire's claims against Sorenson and Desselle. Accordingly, Mire's claims are DISMISSED WITHOUT PREJUDICE.

New Orleans, Louisiana, this __1st__ day of March, 2017.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[47] R. Doc. 27 at 10.

14